IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) CHAMBER OF COMMERCE OF          )
THE UNITED STATES OF AMERICA;       )
(2) OKLAHOMA STATE CHAMBER OF       )
COMMERCE AND ASSOCIATED             )
INDUSTRIES; (3) GREATER             )
OKLAHOMA CITY CHAMBER OF            )
COMMERCE; (4) METROPOLITAN          )
TULSA CHAMBER OF COMMERCE,          )
INC.; (5) OKLAHOMA RESTAURANT       )
ASSOCIATION; and (6) OKLAHOMA       )
HOTEL AND LODGING ASSOCIATION,      )
                                    )
                 Plaintiffs,        )
                                    )
vs.                                 )          No. CIV-08-109-C
                                    )
(1) BRAD HENRY, in his official capacity  )
as Governor of the State of Oklahoma;     )
(2) W.A. DREW EDMONDSON, in his           )
official capacity as Attorney General of the  )
State of Oklahoma; (3) KEITH              )
McARTOR; (4) STAN EVANS;                  )
(5) MARK ASHTON; (6) ANN                  )
 CONG-TANG; (7) ELVIA HERNANDEZ; )
(8) RITA MAXWELL; (9) TERESA              )
RENDON; (10) SAMMIE VASQUEZ, SR., )
and (11) JUANITA WILLIAMS, in their       )
official capacities as Members of the     )
Oklahoma Human Rights Commission; and  )
(12) THOMAS E. KEMP, JR.; (13) JERRY )
JOHNSON, and (14) CONSTANCE IRBY, )
in their official capacities as Members of  )
the Oklahoma Tax Commission,              )
                                          )
                 Defendants.              )

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs in this action challenge the execution and enforcement of Sections 7 and 9 of the Oklahoma Taxpayer and Citizen Protection Act of 2007, more commonly known as House Bill 1804 (herein either "H.B. 1804" or "the Act").  <u>See</u> H.B. 1804, 51st Leg., 1st Sess. (Okla. 2007).  According to Plaintiffs, the challenged provisions of H.B. 1804 cannot survive, as they are preempted by federal law and/or are unconstitutional under the Supremacy Clause of the U.S. Constitution.  Plaintiffs have now filed a Motion for Preliminary Injunction seeking to preclude certain portions of the Act from becoming enforceable as scheduled on July 1, 2008.[1]  Defendants in various groupings have filed responses arguing injunctive relief is inappropriate.  To begin, the Court will set out the portions of the Act challenged by Plaintiff.

Plaintiffs' Complaint challenges two sections of Oklahoma law which are the codification of H.B. 1804.  First, Section 7 of H.B. 1804, now codified at 25 Okla. Stat. § 1313, which states:

> A.    Every public employer shall register with and utilize a Status Verification System as described in subparagraphs a or b of paragraph 1 of Section 6 of this act to verify the federal employment authorization status of all new employees.

> B.   1.    After July 1, 2008, no public employer shall enter into a contract for the physical performance of services within this state unless the contractor registers and participates in the Status Verification System to verify the work eligibility status of all new employees.

---

[1]  H.B. 1804 became effective on November 1, 2007.  However, the provisions of Section 7 codified at 25 Okla. Stat. § 1313 are not enforceable until July 1, 2008.

2

2.    After July 1, 2008, no contractor or subcontractor who enters into a contract with a public employer shall enter into a such a contract or subcontract in connection with the physical performance of services within this state unless the contractor or subcontractor registers and participates in the Status Verification System to verify information of all new employees.

3.    The provisions of this subsection shall not apply to any contracts entered into prior to the effective date of this section even though such contracts may involve the physical performance of services within this state after July 1, 2008.

C.  1.    It shall be a discriminatory practice for an employing entity to discharge an employee working in Oklahoma who is a United States citizen or permanent resident alien while retaining an employee who the employing entity knows, or reasonably should have known, is an unauthorized alien hired after July 1, 2008, and who is working in Oklahoma in a job category that requires equal skill, effort, and responsibility, and which is performed under similar working conditions, as defined by 29 U.S.C. Section 206(d)(1), as the job category held by the discharged employee.

2.    An employing entity which, on the date of the discharge in question, was currently enrolled in and used a Status Verification System to verify the employment eligibility of its employees in Oklahoma hired after July 1, 2008, shall be exempt from liability, investigation, or suit arising from any action under this section.

3.    No cause of action for a violation of this subsection shall arise anywhere in Oklahoma law but from the provisions of this subsection.

(Footnotes omitted.)   Second is Section 9 of H.B. 1804, now codified at 68 Okla. Stat.

§ 2385.32, which states:[2]

A. If an individual independent contractor, contracting for the physical performance of services in this state, fails to provide to the contracting entity documentation to verify the independent contractor's employment

---

[2] Section 2385.32 was effective and enforceable as of November 1, 2007.

3

authorization, pursuant to the prohibition against the use of unauthorized alien labor through contract set forth in 8 U.S.C., Section 1324a(a)(4), the contracting entity shall be required to withhold state income tax at the top marginal income tax rate as provided in Section 2355 of Title 68 of the Oklahoma Statutes as applied to compensation paid to such individual for the performance of such services within this state which exceeds the minimum amount of compensation the contracting entity is required to report as income on United States Internal Revenue Service Form 1099.

B. Any contracting entity who fails to comply with the withholding requirements of this subsection shall be liable for the taxes required to have been withheld unless such contracting entity is exempt from federal withholding with respect to such individual pursuant to a properly filed Internal Revenue Service Form 8233 or its equivalent.

C. Nothing in this section is intended to create, or should be construed as creating, an employer-employee relationship between a contracting entity and an individual independent contractor.

According to Plaintiffs, these statutes cannot be enforced as they improperly conflict with federal law and are thus preempted; therefore, Plaintiffs argue they are entitled to injunctive relief barring Defendants from enforcing the challenged portions of H.B. 1804.  Defendants disagree, arguing Oklahoma's law addresses issues within the realm of those matters left to the states by the Constitution and Congress.  Additionally, Defendants have filed Motions to Dismiss, challenging the Court's jurisdiction to consider Plaintiffs' claims and whether or not Plaintiffs have stated a claim for relief.  Prior to considering the request for injunctive relief, the Court must first resolve the Motions to Dismiss filed by Defendants.

1.  Motions to Dismiss

Defendants Governor Brad Henry ("Henry") and Attorney General Drew Edmondson ("Edmondson") seek dismissal, arguing the Court lacks jurisdiction by operation of the Tax

4

Injunction Act, 28 U.S.C. § 1341.  In the alternative, Henry and Edmondson argue Plaintiffs

lack standing to challenge H.B. 1804 as they cannot show they will suffer any injury from

the Act or that notions of federalism and comity should prevent this Court from considering

Plaintiffs' action.  Finally, Henry and Edmondson argue that even if the federal laws

Plaintiffs argue preempt H.B. 1804 are valid, H.B. 1804 does not impermissibly interfere

with those federal laws.

Defendants Keith McArtor, Stan Evans, Mark Ashton, Ann Cong-Tang, Elvia

Hernandez, Rita Maxwell, Teresa Rendon, Sammie Vasquez, Sr., and Juanita Williams, all

members of the Oklahoma Human Rights Commission ("HRC"), filed a separate motion

which precisely mirrors that of Defendants Henry and Edmondson.

Defendants Constance Irby, Thomas E. Kemp, Jr., and Jerry Johnson, all state tax

officials who are members of the Oklahoma Tax Commission ("Tax"), seek dismissal of

Plaintiffs' action pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6) and Rule 12(h)(3).  The

Tax Defendants argue the Court's jurisdiction over Plaintiffs' case is prohibited by the Tax

Injunction Act, 28 U.S.C. § 1341, and/or the Supremacy Clause.[3]

### A.  Tax Injunction Act

All Defendants argue that Plaintiffs' challenge to 68 Okla. Stat. § 2385.32 must fail

because this Court is barred from considering it by operation of the Tax Injunction Act, 28

---

[3] Plaintiffs have filed a motion seeking to strike the Reply Brief filed by the Tax Defendants, arguing it raises issues for the first time.  The Court finds the issues raised in the Reply Brief are not so distinct from those raised by other Defendants or in their original brief that they create surprise or unfair advantage.  Accordingly, Plaintiffs' Motion to Strike will be denied.

U.S.C. § 1341 ("TIA").  Defendants argue that the statute focuses on issues of state taxation and is therefore beyond the jurisdiction of the Court.

The TIA states:  "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  According to Defendants, under the plain language of this statute, Plaintiffs must first pursue remedies in state court and, if those fail, in the United States Supreme Court.  On this basis, Defendants argue that this Court lacks jurisdiction to consider Plaintiffs' challenge to § 2385.32.

Under Tenth Circuit precedent, the "critical inquiry" in assessing the applicability of the TIA is "the purpose of the assessment and the ultimate use of the funds."  Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1311 (10th Cir. 1999).  In evaluating the purpose of the assessment, the Fourth Circuit has stated:  "[i]f regulation is the primary purpose of a statute, revenue raised under the statute will be considered a fee rather than a tax."  S.C. ex rel. Tindal v. Block, 717 F.2d 874, 887 (4th Cir. 1983).  The First Circuit has established a three-part test for determining whether an assessment is regulatory or a tax.  First, does the assessment fall on many or all citizens, i.e., does it raise money for the general fund to be spent to benefit the entire community?  Second, is the assessment imposed by the legislature or an agency?  Third, and most determinative, is the assessment intended to raise revenue or control behavior?  San Juan Cellular Tel. Co. v. Public Serv. Comm'n of P.R., 967 F.2d 683, 685 (1st Cir. 1992).

Upon review, it is clear that § 2385.32 is not a tax statute.  First, it does not create a new tax; rather, it alters the manner in which the existing withholding tax rates are applied. Second, and most importantly, it is undisputed that the underlying purpose of the Act, including § 2385.32, is to prevent the employment of illegal aliens.  Thus, the clear purpose of 68 Okla. Stat. § 2385.32 is to regulate behavior, not raise revenue.  For either reason, the TIA does not bar this Court's consideration of Plaintiffs' challenge to H.B. 1804. Accordingly, Defendants' motion seeking dismissal on that basis will be denied.

**B.  Standing**

Defendants Henry, Edmondson, and HRC challenge Plaintiffs' attack on 25 Okla. Stat. § 1313, arguing that Plaintiffs lack standing to challenge the statute.  According to these Defendants, Plaintiffs cannot challenge subsection (A) of the statute as they are not "public employers."  As to subsections (B) and (C), these Defendants argue Plaintiffs can only establish standing if they admit that they plan to hire an illegal alien after July 1, 2008. Plaintiffs disagree, arguing that in their role as chambers of commerce and business associations representing thousands of statewide businesses, they have numerous members who will be adversely impacted by implementation of the challenged sections of H.B. 1804.

Subsection (A) of Section 1313 only applies to "public employers."  This term is defined in 25 Okla. Stat. § 1312 as follows:  "'Public employer' means every department, agency, or instrumentality of the state or a political subdivision of the state[.]"  Plaintiffs do not challenge this subsection and raise no argument that it applies to them; nor do they even

remotely suggest that they are seeking relief related to that subpart. Thus, Defendants' arguments related to that subsection are immaterial.

As for subsections (B) and (C), Defendants' interpretation of these portions of the statute is overly narrow. Under the clear terms of the Act, any employer who seeks to do business with the State after July 1, 2008, must comply with the terms of the Act by using one of two methods for verifying the status of their employees. To have standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). Plaintiffs have provided evidence that their members intend to do business with the State and that using one of the status verification systems will cause the member harm. Although none of the Plaintiffs has alleged that any of them will suffer individual harm, Plaintiffs have alleged potential injury to their membership. This allegation is sufficient to establish organizational standing. As stated in Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977):

> we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Here, any of Plaintiffs' members will suffer a credible threat of injury from, enforcement of § 2385.32 or after July 1, 2008, from § 1313; there is no need for the individual members to participate in this action; and seeking to prevent enforcement of the Act is directly in line with Plaintiffs' purpose of advocating for the benefit of their members before federal, state,

and local governments and court systems. Thus, the Court finds Plaintiffs have associational standing to challenge subsections (B) and (C) of § 1313.

### C. Federalism and Comity.

Defendants Henry, Edmondson, and HRC argue that Plaintiffs cannot pursue their claims in a federal forum as they are barred by questions of Eleventh Amendment immunity and/or sovereign immunity. These Defendants assert that because Oklahoma has not waived its sovereign immunity, Plaintiffs' case can proceed only if the Court finds the doctrine announced in Ex parte Young[4] applies and that Congress properly and constitutionally abrogated the State's sovereign interest when it enacted 8 U.S.C. § 1324a(h)(2).[5]

The Supreme Court, Tenth Circuit, and every other circuit that has considered the matter, has clearly held that when a 42 U.S.C. § 1983 suit seeks only prospective relief against a state official named in his/her official capacity, it is not barred by the Eleventh Amendment. The only real issue remaining on the subject was recently addressed by the Supreme Court in Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002). In 2007, the Tenth Circuit analyzed the history of Ex parte Young and the effect of Verizon Maryland, and recognized the Supreme Court had issued a clear instruction for courts

---

[4] 209 U.S. 123 (1908). Under the doctrine announced in this case, "when an official of a state agency is sued in his official capacity for prospective equitable relief, he is generally not regarded as 'the state' for purposes of the Eleventh Amendment and the case may proceed in federal court." ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1188 (10th Cir. 1998) (footnote omitted).

[5] Plaintiffs argue this statute preempts H.B. 1804. A more detailed discussion of the statute and its impact on the Act occurs below.

considering whether the doctrine applied.  Quoting <u>Verizon Maryland</u>, the Tenth Circuit stated:  "'[i]n determining whether the doctrine of <u>Ex parte Young</u> avoids an Eleventh Amendment bar to suit, a court need only conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."'"  <u>Hill v. Kemp</u>, 478 F.3d 1236, 1259 (10th Cir. 2007), <u>cert. denied</u>, ___ U.S. ___, 128 S. Ct. 873, and <u>cert. denied</u>, ___ U.S. ___, 128 S. Ct. 884 (2008). Explaining further, the Circuit noted that the question to be asked was whether the lawsuit imposes upon the State a monetary loss from a past breach of a legal duty.  If it does not, the suit seeks only prospective relief, and the Eleventh Amendment is no bar.  <u>Id.</u>  Plaintiffs' Complaint clearly seeks only prospective relief, as it requests that the Court prevent a future event rather than provide redress for a past harm.  Accordingly, Eleventh Amendment immunity is inapplicable here.

### D.  Congressional authority to enact 8 U.S.C. § 1324a(h)(2).

Defendants Henry, Edmondson, and HRC argue that Congress did not act with proper authority in passing 8 U.S.C. § 1324a(h)(2).[6]  According to these Defendants, when passing the statute Congress infringed upon the lawmaking autonomy of the State of Oklahoma without proper constitutional authority.  As a result, these Defendants assert § 1324a(h)(2) must be analyzed under a rational basis standard.  Finally, these Defendants argue that even

---

[6]  Pursuant to Fed. R. Civ. P. 5.1(b) and 28 U.S.C. § 2403(a), the Court has issued notice to the United States Attorney General of Defendants' challenge to the constitutionality of a federal statute.  Although the Attorney General has not yet been heard on the issue, the Court can find that § 1324a(h)(2), is constitutional prior to any intervention by the Attorney General.  <u>See</u> <u>Wallach v. Lieberman</u>, 366 F.2d 254, 257-58 (2d Cir. 1966).

if Congress acted with proper authority in passing the statute, that statute does not preempt H.B. 1804.

Section 1324a(h)(2) is part of the Immigration Control and Reform Act of 1986, and as passed by Congress, it states: "The provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens."

"The Supremacy clause of the United States Constitution invalidates state laws that 'interfere with or are contrary to' federal law." N.J. Payphone Ass'n, Inc. v. Town of West New York, 299 F.3d 235, 241-42 (3d Cir. 2002) (quoting Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 211 (1824)). Thus, if H.B. 1804 interferes with or is contrary to § 1324a, it is preempted. Of course, the first step is examining whether Congress acted properly in passing § 1324a.

The Supreme Court has explained the purpose behind § 1324a:

Congress enacted IRCA, [Immigration Reform and Control Act of 1986, 8 U.S.C. §§ 1101 et seq.] a comprehensive scheme prohibiting the employment of illegal aliens in the United States. § 101(a)(1), 100 Stat. 3360, 8 U.S.C. § 1324a. As we have previously noted, IRCA "forcefully" made combating the employment of illegal aliens central to "[t]he policy of immigration law." INS v. National Center for Immigrants' Rights, Inc., 502 U.S. 183, 194, and n. 8, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991). It did so by establishing an extensive "employment verification system," § 1324a(a)(1), designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States, § 1324a(h)(3).

<u>Hoffman Plastic Compounds, Inc. v. NLRB</u>, 535 U.S. 137, 147-48 (2002).  Years earlier, the

Tenth Circuit recognized a long line of Supreme Court cases establishing without question

Congress's power to regulate matters related to immigration.

> At the outset we note that the United States Constitution confers on
> Congress the power to regulate matters relating to immigration.  U.S. Const.
> art. 1, § 9, cl. 1.  In addition, the Supreme Court has "repeatedly emphasized
> that 'over no conceivable subject is the legislative power of Congress more
> complete than it is over' the admission of aliens." <u>Fiallo v. Bell</u>, 430 U.S. 787,
> 792, 97 S.Ct. 1473, 1478, 52 L.Ed.2d 50 (1977) (quoting <u>Oceanic Navigation
> Co. v. Stranahan</u>, 214 U.S. 320, 339, 29 S.Ct. 671, 676, 53 L.Ed. 1013 (1909)).
> This broad grant of authority is exclusive to Congress.  <u>Galvan v. Press</u>, 347
> U.S. 522, 531-32, 74 S.Ct. 737, 742-43, 98 L.Ed. 911 (1954).

<u>Lopez v. U.S. INS</u>, 758 F.2d 1390, 1392 (10th Cir. 1985).  The Circuit summed up its

holding regarding the authority of Congress on immigration matters:  "Because Congress

may entirely pre-empt state authority in immigration matters, we dismiss plaintiff's claim that

the INS actions violated the Tenth Amendment." <u>Id.</u>  Thus, Congress has the authority to

preempt state laws on immigration matters.

The question then becomes whether § 1324a(h)(2) prevents the State of Oklahoma

from enacting and/or enforcing the challenged provisions of H.B. 1804.  That question must

of course be answered in the context of Plaintiffs' Motion for Preliminary Injunction.

<u>2.  Preliminary Injunction</u>

Plaintiffs argue that a preliminary injunction is necessary to prevent enforcement of

an unconstitutional law and that the Court should issue an order preventing the challenged

portions of H.B. 1804 from going into effect.  In response, Defendants argue that Plaintiffs

cannot satisfy the prerequisites for obtaining injunctive relief.

It is well established that in order to obtain a preliminary injunction, the moving party must establish four factors:  (1) it will suffer irreparable harm if the injunction is not granted, (2) its threatened injury outweighs the harm caused to the opposing party as a result of the injunction, (3) the injunction is not adverse to the public interest, and (4) it has a substantial likelihood of success on the merits of the case.

Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1260 (10th Cir. 2004).  "[T]he more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir. 2001).

Plaintiffs argue they are entitled to an injunction because the challenged provisions of H.B. 1804 conflict with, and are preempted by, federal law.  According to Plaintiffs, 8 U.S.C. § 1324a(h)(2) reflects Congress's intent to preempt the field of immigration regulation and because H.B. 1804 conflicts with § 1324a(h)(2), the state law must be set aside.  Defendants argue H.B. 1804 is not impacted by § 1324a(h)(2), as 68 Okla. Stat § 2385.32 does not impose a civil or criminal sanction, but rather a tax, and taxation is an area within the state's control.  A similar argument is raised in regard to 25 Okla. Stat. § 1313, as these Defendants argue it merely enforces the State's right to contract with whom it chooses.

Despite the clever parsing offered by Defendants, the Court finds Plaintiffs are substantially likely to establish that 68 Okla. Stat. § 2385.32 and 25 Okla. Stat § 1313 are preempted by 8 U.S.C. § 1324a(h)(2).  While Defendants are correct that issues of taxation are within the rights of the State to regulate, Plaintiffs are likely to prove that the statute at

issue here is not a taxation statute but rather a form of civil sanction.[7]  Section 2385.32 imposes a penalty of increasing the tax rate on an employer who doesn't comply with the State's immigration law.  If Plaintiffs establish this fact, they would establish that § 2385.32 attempts to regulate immigration by imposing sanctions.  In that regard, § 2385.32 would act in a manner expressly forbidden by § 1324a(h)(2).

The same holds true for § 1313.  Although that statute imposes penalties of loss of contract and/or facing a civil lawsuit for wrongful termination, those penalties are dependent on failing to follow the State's regime for regulating the employment of illegal aliens.  Thus, Plaintiffs may establish that the penalties contemplated by § 1313 are fairly considered civil sanctions and therefore preempted by § 1342a(h)(2).  Defendants' argument that the statute represents nothing more than the State choosing with whom it wishes to contract is misleading.  Without question the State can, within limits, set guidelines controlling the eligibility for contracts.  However, the State cannot create or impose guidelines that conflict with the Constitution or federal law.  Here, if Plaintiffs prove that § 1313 operates in a manner that imposes a sanction barred by § 1324a(h)(2), the state law must give way.  Accordingly, the Court finds Plaintiffs have established a substantial likelihood of success on the merits of the case.[8]

---

[7]  As the Court noted above, § 2385.32 is not a "taxation" statute for which injunctive relief is prohibited by the TIA.  For purposes of the discussion here, i.e., likelihood of success on the merits, the Court focuses on whether the statute is a civil sanction as defined by § 1324a(h)(2).

[8]  Because likelihood of success on the merits appears by virtue of express preemption alone, it is unnecessary to consider, at this stage, the arguments related to other theories of preemption.

Turning to the issue of irreparable harm, the Court finds this requirement is also satisfied.  Plaintiffs have provided affidavits demonstrating that the challenged portions of H.B. 1804 will cause them to suffer irreparable harm.  Indeed, as Plaintiffs point out, if the challenged provisions become enforceable, Plaintiffs will face the choice of complying with either state or federal law, but not both.  As Plaintiffs note in their brief, federal law prohibits use of the Status Verification Systems to verify employment eligibility.  Yet, if Plaintiffs do not use the system to do that, they have failed to comply with H.B. 1804.  Further, the State, through H.B. 1804, attempts to restrict the documents adequate to verify a potential employees status, but this restriction is contrary to the instructions set by federal law for using the I-9 form.  Additionally, if Section 7 of H.B. 1804 becomes enforceable, Plaintiffs will also be forced to comply with a law that may ultimately be found to be preempted, and no method of compensation can remedy these harms.  As for § 2385.32, which is already in effect, Plaintiffs have offered evidence through affidavits establishing that it is now causing and will likely continue to cause irreparable harm.

The Court further finds that the potential harm to Plaintiffs outweighs any harm to Defendants caused by the brief delay until the matter can be finally resolved.  There is little doubt that the issues H.B. 1804 seeks to address have existed for a long time.  Further, it is clear that issues of illegal immigration are a pressing issue for both the State and Federal government.   Any delay in enforcing the provisions of H.B. 1804 necessitated by determining their validity will have a de minimis impact on Defendants' interests and a final

resolution to the issue will play a significant role in defining which government is responsible and authorized to address the immigration issue.

Finally, while the public clearly has an interest in issues of illegal immigration, and no court should treat the prospect of overturning state law without grave consideration, the Constitution requires that the will of the States must occasionally give way to the need for uniformity among the States, and that uniformity can only be accomplished through congressional action. Thus, for now, the provisions of H.B. 1804 challenged by Plaintiffs must be enjoined until a final determination can be made about the extent to which States can permissibly regulate without interfering with areas reserved exclusively for congressional action.[9] The Court is not deciding that Plaintiffs will ultimately prevail, rather, when the materials before the Court are viewed as the facts and law exist today, it appears that Plaintiffs are likely to prevail and consequently are entitled to a preliminary injunction.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court finds that Plaintiffs have demonstrated a risk of harm from the enforcement of 25 Okla. Stat. § 1313(B) & (C) and 68 Okla. Stat. § 2385.32. Thus, Plaintiffs have standing to challenge those statutes. Further, the Court

---

[9] Although raised by neither party, the Court has considered the need for Plaintiffs to post security prior to issuance of an injunction. After consideration of the merits of the parties' position and any potential harm to Defendants from the grant of injunctive relief, the Court finds no bond is necessary. <u>See</u> <u>Winnebago Tribe of Neb. v. Stovall</u>, 341 F.3d 1202, 1206 (10th Cir. 2003) (finding no bond necessary where there was no showing of harm from injunction.); <u>Moltan Co. v. Eagle-Picher Indus., Inc.</u>, 55 F.3d 1171, 1176 (6th Cir. 1995) (finding no bond necessary where plaintiff had strong likelihood of success on merits.).

finds Plaintiffs have stated claims which, if proven, would entitle them to relief. Accordingly, the Motion to Dismiss Complaint for Declaratory and Injunctive Relief (Dkt. No. 25) is DENIED; the Rule 12(b) and 12(h)(3) Motion to Dismiss Irby, Kemp and Johnson (Dkt. No. 42) is DENIED; the Motion to Dismiss Complaint for Declaratory and Injunctive Relief (Dkt. No. 48) is DENIED; Plaintiffs' Motion to Strike the Reply Brief of Thomas E. Kemp, Jr., Jerry Johnson, and Constance Irby (Dkt. No. 57) is DENIED.  Because of the need to determine the validity of the State's action in an area typically reserved for congressional action and the irreparable harm Plaintiffs will suffer if an unconstitutional Act is enforced, the Court finds Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 5) should be and is GRANTED.

IT IS SO ORDERED this 4th day of June, 2008.


ROBIN J. CAUTHRON
United States District Judge